UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARIO VALENZUELA, in his official capacity as Treasurer and Director of Clinica Sierra Vista,

Plaintiff,

v.

ANA ZARCO, in her official capacity as Chair and Director of Clinica Sierra Vista; CLINICA SIERRA VISTA, a California nonprofit corporation; and DOES 1 to 100,

Defendants.

Case No. 1:26-cv-03338 JLT EGC

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

(Doc. 2)

## I.    BACKGROUND

Mario Valenzuela is a volunteer Director and Treasurer of Clinica Sierra Vista, "a Section 330-funded Federally Qualified Health Center." (Doc. 2 at ¶¶ 1–2.) In Petitioner's view, the Chair of the Clinica's Board, Ana Zarco, allegedly "took actions ultra vires while the Board was below the Health Resources and Services Administration ('HRSA') required minimum number of directors." (*Id*. at ¶ 1.)

Petitioner brings the instant Complaint, (Doc. 2) and a motion for temporary restraining order ("TRO"), (Doc. 1), under the following two theories. First, Petitioner alleges that because "all Clinica revenue must be used in furtherance of its federally authorized projects under 42

1

U.S.C. § 254b(e)(5)(D)," Chair Zarco's "obstruction of a Board-approved investigation into the safeguarding of those funds creates immediate federal compliance risk[]" and "prevents the Board from determining whether federal self-reporting is required." (Doc. 2 at ¶¶ 29–31.) Second, Petitioner alleges that the "Board cannot lawfully act while below nine members." (*Id*. at ¶¶ 28, 38 (citing 42 C.F.R. § 51c.304(a).)

Petitioner contends that these two issues, taken together, "placed federal project funds at heightened risk." (*Id*. at ¶ 33.) He argues that the "Chair's actions, taken while the Board lacked the federally required minimum composition" and without federal authorization, amounted to ultra vires acts. (*Id*. at ¶ 34.) Consequently, he asks this Court to declare Chair Zarco's allegedly "ultra vires actions void and enjoin their continuation." (*See id*. at ¶¶ 42, 45, 57, 60.)

For the reasons set forth below, Plaintiff's motion is **DENIED**. (*See* Doc. 1.)

## II.    STANDARD OF DECISION

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *R.F. by Frankel v. Delano Union Sch. Dist.*, 224 F. Supp. 3d 979, 987 (E.D. Cal. 2016). Injunctive relief is an "extraordinary remedy, never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). As such, the Court may only grant such relief "upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22. To prevail, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent preliminary injunctive relief; (3) that the balance of equities tips in the moving party's favor; and (4) that preliminary injunctive relief is in the public interest. *Id*. Local Rule 231 governs the filing of requests for TROs in this District.

A preliminary injunction "can take two forms," either a "prohibitory injunction" or a "mandatory injunction." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009). A "prohibitory injunction" simply "preserve[s] the status quo pending a determination of the action on the merits," while a "mandatory injunction" "orders a responsible party to take action." *Id*. (quotation omitted). In the context of injunctive relief, "[t]he status quo means the last, uncontested status which preceded the pending controversy." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 n.4 (9th Cir. 2015) (internal quotation omitted). Mandatory

injunctions are "particularly disfavored," and a plaintiff's burden is "doubly demanding" when seeking one. *Id*. "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Marlyn Nutraceuticals*, 571 F.3d at 879 (internal quotation marks and citation omitted). Consequently, in seeking a mandatory injunction, plaintiffs must "establish that the law and facts *clearly favor*" their position. *Garcia*, 786 F.3d at 740 (emphasis in original). The nature of the relief sought here—an order requiring action by the Defendants—arguably triggers the heightened mandatory injunction standard.

### III.   ANALYSIS

Plaintiff fails to establish likelihood of success of the merits. Citing to *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–91 (1949), *Dugan v. Rank*, 372 U.S. 609, 621–23 (1963), and *Sierra Club v. Trump*, 963 F.3d 874, 890 (9th Cir. 2020), Petitioner contends that "[f]ederal courts possess inherent equitable authority to restrain actions by officials who act beyond the scope of authority delegated to them by federal statute or regulation, even where the underlying statute does not provide a private right of action." (Doc. 2 at 11–12); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal *executive action*, tracing back to England.") (citation omitted) (emphasis added). However, the Complaint does not provide any indication that the instant action involves a federal agency or a federal officer acting in a manner contrary to the law—and the cited opinions do not excuse or waive the need for Petitioner to address this issue.

Petitioner has not raised a colorable legal basis for this Court to conclude that Respondent Ana Zarco is a federal officer, or that Clinica Sierra Vista—a California nonprofit corporation—is an extension of the executive branch of the federal government simply because it "is receiving a grant under section 254b." *See* 42 U.S.C. § 1396d(1)(2)(B)(i); *see also Ne. Med. Servs., Inc. v. Cal. Dep't of Healthcare Servs.*, No. C 12-2895 CW, 2013 WL 428721, at *1 (N.D. Cal. Feb. 1, 2013) (discussing some of the "condition[s]" for receiving federal funding under § 330 of the Public Health Services Act).

The cited pages of *Larson* discussed the question of when "suits for specific relief against

officers of the sovereign" are "suits against the sovereign" in the context of sovereign immunity. 337 U.S. at 687–89. The cited pages of *Dugan* further elaborated on this point and explained that, generally speaking, a suit against a federal officer is "a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." 372 U.S. at 620 (cleaned up). Granted, there are two exceptions to that general rule: "(1) action by officers beyond their statutory powers and (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void. In either of such cases the officer's action can be made the basis of a suit for specific relief against the officer as an individual." *Id*. at 621–22. (cleaned up). But nothing in *Larson* or *Dugan* abrogates the need to explain why Clinica or any of its officers or employees should be treated as federal officials.

*Sierra Club* reiterated the proposition that, at least within the Ninth Circuit, the Appropriations Clause of the Constitution provides a private cause of action; as such, a plaintiff may "invoke *separation-of-powers* constraints, like the Appropriations Clause, to challenge *agency* spending in excess of its delegated authority." 963 F.3d at 888–89 (emphases added). Again, nothing in *Sierra Club* even remotely suggests that any of the players in this case can be the subject of such a lawsuit. Rather, one of the fundamental assumptions which undergirds the Complaint is that the federal government *will* faithfully execute the law and "crack down" on Respondents' alleged non-compliance with federal laws and regulations, which could jeopardize Clinica Sierra Vista's federal funding. (Doc. 2 at ¶¶ 28–35.) Therefore, *Sierra Club* is of no help to Petitioner.

Finally, Petitioner's request for a declaratory judgment under Count II of the Complaint does not cure his failure to articulate an affirmative cause of action, for "the Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) (collecting cases).

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, the request for a temporary restraining order, Doc. 1, is

4

**DENIED**.

Moreover, in light of the findings above and the Court's *sua sponte* obligation to ensure its own jurisdiction, Plaintiff is ordered to show cause within 21 days why this case should not be dismissed for lack of jurisdiction based upon the absence of any federal cause of action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (dismissal for lack of subject matter jurisdiction appropriate where asserted federal claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy").

IT IS SO ORDERED.

Dated:   **May 7, 2026**

UNITED STATES DISTRICT JUDGE